**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

JIANHUA DONG AND HONG CHEN,

    Plaintiffs,

v.

MICHAEL CHERTOFF, *et al.*,

    Defendants.

No. C 07-0266 SBA

**ORDER**

[Docket Nos. 1, 5, 9]

---

Plaintiffs Jianhua Dong and Hong Chen's petition before the Court [Docket No. 1] seeks to compel the defendants to the process their form I-485 applications for adjustment to lawful permanent resident status. Defendants Michael Chertoff (Secretary of the Department of Homeland Security), Emilio T. Gonzalez (Director of United States Citizenship and Immigration Services), Evelyn Upchurch (Acting Director of the Texas Service Center of the United States Citizenship and Immigration Services), and Robert S. Mueller (Director of the Federal Bureau of Investigation) have filed a motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim [Docket No. 5]. Plaintiffs Dong and Chen have in turn submitted a motion for summary judgment [Docket No. 9]. A hearing was held on these matters on June 5, 2007. For the reasons that follow, the defendants' motion to dismiss is DENIED and the plaintiffs' motion for summary judgment is GRANTED.

**BACKGROUND**

Jianhua Dong and Hong Chen are husband and wife. They are citizens of the People's Republic of China. On September 22 or 26, 2005,[1] they filed applications to become lawful permanent residents of the United States by submitting Form I-485 applications to the United States Citizenship and Immigration Services (USCIS). Dong and Chen filed their I-485 applications at the California Service Center of the USCIS, which were subsequently transferred to the Texas Service Center for processing

---

[1] The parties offer slightly different dates on when the applications were submitted. For present purposes, this minor discrepancy does not affect the analysis.

on March 23, 2006.

A required security check has yet to be completed---a "name check" to be done by the Federal Bureau of Investigation. The FBI name check is one of several security checks utilized by the USCIS to investigate the background of applicants. *See Toor v. Still*, 2007 WL 2028407, at *1 (N.D. Cal. 2007). The USCIS maintains that until it receives the completed name check from the FBI, it is prevented from adjudicating the plaintiffs' applications. Naboone Puripongs, an adjudications officer with the Texas Service Center declares:

> The record reflects that on September 22, 2005, Jianhua Dong and Hong Chen filed an application for adjustment of status to permanent resident, Form I-485. After reviewing the information pertaining to Jianhua Dong's adjustment of status application, I attest that USCIS referred this case for lawfully required national security background investigations and that TSC in accordance with the requirements for background investigations is prohibited from adjudicating plaintiff's application. Plaintiff Jianhua Dong's application remains pending the completion of national security background investigations. Once the required national security background investigations are completed, plaintiff's application will be adjudicated. Plaintiff Hong Chen's application for adjustment of status to lawful permanent resident, I-485 is dependent upon Jianhua Dong['s] application and cannot be approved unless and until Jianhua Dong's application is approved.

Docket No. 5 (Puripongs Decl. at ¶ 13).

The plaintiffs are not requesting that a decision be granted in their favor by the UCSIC, only that the defendants be compelled to process their applications for an adjustment of status to lawful permanent residents. The question at the heart of this dispute is whether the Court has subject matter jurisdiction to hear the plaintiffs' complaint of delayed action on their I-485 applications, an issue that has come before numerous district courts across the country in recent years. There is as of yet no appellate guidance, and the district courts are split.

**A.     Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction**

The defendants contest subject matter jurisdiction, maintaining that 8 U.S.C. § 1252(a)(2)(B)(ii) divests the Court of jurisdiction to hear claims relating to the adjustment of status of resident aliens. The plaintiffs premise the Court's jurisdiction on the Administrative Procedure Act and the mandamus

2

statute, codified at 28 U.S.C. § 1361.[2]

**1.      Mandamus and the Administrative Procedure Act**

Under 28 U.S.C. § 1361, the Mandamus and Venue Act of 1962, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus is available only when (1) the plaintiff's claim is clear and certain; (2) the defendant official's duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available. *Johnson v. Reilly*, 349 F.3d 1149, 1154 (9th Cir. 2003); *Lowry v. Barnhart*, 329 F.3d 1019, 1021 (9th Cir. 2003). Even if this test is met, a district court has discretion to deny relief. *Johnson*, 349 F.3d at 1154.

As for the Administrative Procedure Act (APA), it "authorizes suit by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004) (quoting 5 U.S.C. § 702). "Failures to act are sometimes remediable under the APA, but not always." *Norton*, 542 U.S. at 61. "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 64 (emphasis in original).

The APA itself does not provide an independent basis for subject matter jurisdiction. *See Califano v. Sanders*, 430 U.S. 99, 107 (1977). But the APA, in conjunction with federal question jurisdiction under 28 U.S.C. § 1331, may vest a federal court with jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed." *See, e.g., Elmalky v. Upchurch*, 2007 WL 944330, at *2 (N.D. Tex. 2007); *Yu v. Brown*, 36 F. Supp. 2d 922, 928-29 (D.N.M. 1999). As the Ninth Circuit explained in *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 830 (9th Cir. 2002):

---

[2]     The plaintiffs also assert jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act, however, is not an independent basis for jurisdiction. *See Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950).

3

> A good deal of confusion among courts and litigants has been spawned by Congress' choice of words in the APA. The APA allows that agency actions meeting certain criteria are "subject to judicial review." 5 U.S.C. § 704. However, the Supreme Court has made it clear that the phrase "subject to judicial review" does not confer a grant of subject matter jurisdiction. In *Califano v. Sanders*, 430 U.S. 99, 107, . . . (1977), the Supreme Court settled a long standing controversy by holding that 28 U.S.C. § 1331, rather than the APA, confers jurisdiction on federal courts to review agency action. *Id. See also* Jerry L. Mashaw et al., *Administrative Law* 833 (1998) (explaining that § 1331 confers jurisdiction for relief against unlawful agency action).

Stated another way, "[i]n the absence of a specific statutory provision to the contrary, district courts have jurisdiction to review agency action as part of their general federal question jurisdiction, 28 U.S.C. § 1331." *Proyecto San Pablo v. I.N.S.*, 189 F.3d 1130, 1136 n.5 (9th Cir. 1999).

Moreover, whether jurisdiction is specifically predicated on the mandamus statute (28 U.S.C. § 1361), or on the APA (5 U.S.C. § 706), or both, makes little practical difference, as the result and the analysis that flow from either are the same. Where the relief the plaintiff is seeking is identical under either the APA or the mandamus statute, proceeding under one as opposed to the other is not significant. *See Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997); *see also Hernadez-Avalos v. I.N.S.*, 50 F.3d 842, 845 (10th Cir. 1995) (citation omitted) ("'[a] mandatory injunction [issued under the APA] . . . is essentially in the nature of mandamus'"); *Toor*, 2007 WL 2028407, at *3. "Although the exact interplay between these two statutory schemes has not been thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus under the MVA [Mandamus and Venue Act], 'in essence,' as one for relief under § 706 of the APA." *Independence Mining*, 105 F.3d at 507 (citing *Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)). Accordingly, if the Court has jurisdiction pursuant to one, it need not analyze jurisdiction with respect to the other.

**2.    Title 8 U.S.C. § 1252(a)(2)(B)(ii)**

The defendants argue the mandamus statute and the APA do not provide subject matter jurisdiction, citing the jurisdiction-stripping provision of the Immigration and Nationality Act (INA). Title 8 U.S.C. § 1255(a), also known as section 245 of the INA, reads:

4

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA [Violence Against Women Act] self-petitioner may be adjusted by the Attorney General,[3] in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

Put simply, 8 U.S.C. § 1255 provides that resident aliens may petition the Attorney General for adjustment of status to that of a lawful permanent resident. *See Freeman v. Gonzales*, 444 F.3d 1031, 1035 (9th Cir. 2006). Its purpose is to permit resident aliens to attain permanent resident status without the need for the departure and reentry into the United States. *Id.* at 1036.[4]

The government emphasizes that by the terms of the statute, an alien's status "*may* be adjusted by the Attorney General, *in his discretion* and under such regulations as he may prescribe." 8 U.S.C. § 1255(a) (emphasis supplied). It contends that neither the statute nor its corresponding regulations delineates a particular time-frame for which I-485 applications must be processed. Moreover, the defendants argue that Congress has divested the courts of jurisdiction to consider challenges under section 1255 with the enactment of section 242 of the INA. Section 242 of the INA states that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including . . . section[ ] 1361 . . . no court shall have jurisdiction to review—
> 
> (i) any judgment regarding the granting of relief under section . . . 1255 of this title, or
> 
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland

---

[3] While 8 U.S.C. § 1255(a) refers to the Attorney General as the official who may grant an adjustment of status, the authority to adjudicate applications for adjustment has been transferred to the Secretary of Homeland Security and the USCIS. *See* 6 U.S.C. §§ 271(b)(5), 557; 8 C.F.R. § 245.2(a). For ease of reference, this opinion will refer to the authority and discretion of the Attorney General.

[4] Prior to 1952, resident aliens who wished to become permanent residents were required to "leave the country and apply for an immigrant visa at a consulate abroad." *Elkins v. Moreno*, 435 U.S. 647, 667 (1978). In 1952 Congress enacted the Immigration and Nationality Act, and created a mechanism for eligible aliens already present in the country to seek an adjustment of the immigration status to that of a lawful permanent resident of the United States. *Eldeeb v. Chertoff*, 2007 WL 2209231, at *6 (M.D. Fla. 2007).

Security, other than the granting of relief under section 1158(a) [dealing with asylum] of this title.

8 U.S.C. § 1252(a)(2)(B). Both section 1252 and section 1255 are in subchapter II of chapter 12 of title 8 of the United States Code.

Many courts agree with the government's view and have determined that section 1252 read in conjunction with section 1255 demonstrates Congressional intent to preclude judicial review of actions of the USCIS regarding I-485 applications, including whether the agency is processing the application in a reasonable time-frame.[5] Other courts emphasize the text of 8 U.S.C. § 1252(a)(2)(B)(ii) grants discretion to the Attorney General only as to those matters "specified under this subchapter to be in the discretion of the Attorney General." And while the discretion allotted by statute includes whether or not to grant an adjustment of status, it does not extend to processing the applications at any indefinite length of time or withholding action upon an application altogether.[6]

This issue has come before the Northern District of California at least nine previous times in recent months (ten if an analogous examination of an I-130 application is counted), and in each instance,

---

[5] *See, e.g., Li v. Chertoff*, 482 F. Supp. 2d 1172, 1177 (S.D. Cal. 2007) ("These statutes clearly convey Congress's intent to preclude courts from reviewing discretionary decisions or actions of USCIS regarding I-485 applications"); *Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1352 (S.D. Fla. 2007) ("Sections 242 and 245 of the Immigration and Nationality Act . . . preclude judicial review of any discretionary 'decision or action' of the Attorney General in immigration matters . . . includ[ing] the pace at which immigration decisions are made"); *Safadi v. Howard*, 466 F. Supp. 2d 696, 698-700 (E.D. Va. 2006); *Zheng v. Reno*, 166 F. Supp. 2d 875, 880-81 (S.D.N.Y. 2001) (citations omitted).

[6] *See, e.g., Cao v. Upchurch*, --- F. Supp. 2d ---, 2007 WL 2071900, at *2 (E.D. Pa. 2007) ("While 8 U.S.C. § 1255(a) specifically places the decision of whether to adjust status in the discretion of the Attorney General, it says nothing about the pace of such a decision, and certainly does not confer on the Attorney General discretion to let a petition languish indefinitely"); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 153-54 (D. Mass. 2007) ("The clear meaning of 8 U.S.C. § 1252(a)(2)(B)(ii) is that courts may not review decisions specified as discretionary by the INA. Despite the care taken in the INA to specify the *substance* of an adjustment of status decision as discretionary, the *pacing* of such a decision is not so specified") (emphasis in original); *Elmalky v. Upchurch*, 2007 WL 944330, at *3-*5 (N.D. Tex. 2007) (section 1252(a)(2)(B) does not preclude judicial review over non-discretionary actions); *Duan v. Zamberry*, 2007 WL 626116, at *2 (W.D. Pa. 2007) (section 1252(a)(2)(B)(ii) strips jurisdiction to review only those decisions within the Attorney General's discretion as specified in the statute, namely the decision to adjust status, not the pace of the application processing).

6

the position advanced by the government has been rejected and an obligation to process such applications in a reasonable period of time has been found.[7]

### 3. Interpretive Principles

In determining which interpretation of 8 U.S.C. § 1252(a)(2)(B)(ii) is more sound, it may be useful to consider some background principles of interpretation. The default rule is that agency actions are reviewable under federal question jurisdiction, 28 U.S.C. § 1331 and the APA, even if no statute specifically authorizes judicial review. *See Ana Int'l Inc. v. Way*, 393 F.3d 886, 890 (9th Cir. 2004); *see also Perez-Martin v. Ashcroft*, 394 F.3d 752, 757 (9th Cir. 2005) (there is a "well-settled presumption favoring interpretation of statutes that allow judicial review of administrative action") (citation omitted). Moreover, a narrow construction of a jurisdiction-stripping provision is favored over a broad one, and a jurisdictional bar is not to be expanded beyond its precise language. *See Ana Int'l*, 393 F.3d 891 (citing *Kwai Fun Wong v. United States INS*, 373 F.3d 952 (9th Cir. 2004) (interpreting

---

[7] *See Konchitsky v. Chertoff*, 2007 WL 2070325, at *3 (N.D. Cal. 2007) (Whyte, J.) ("defendants have a nondiscretionary duty to act upon plaintiffs' I-485 application and plaintiff has a right to have his application processed"); *Toor v. Still*, 2007 WL 2028407, at *2 (N.D. Cal. 2007) (Zimmerman, M.J.) ("8 U.S.C. § 1255(a) grants the Attorney General discretion over whether to grant or deny an application for adjustment, not whether to adjudicate the application"); *Fu v. Gonzales*, C 07-0207 EDL (Am. Order issued May 22, 2007) ("This Court concludes that the better reasoned view is that courts have jurisdiction at a minimum under the APA because Defendants have a non-discretionary duty to process the [Adjustment of Status] applications within a reasonable time, as distinct from its discretionary authority of whether to grant or deny the applications"); *Dmitriev v. Chertoff*, 2007 WL 1319533, at *3 (N.D. Cal. 2007) (Ware, J.); *Wu v. Chertoff*, 2007 WL 1223858, at *3 (N.D. Cal. 2007) (Illston, J.) ("taken together, the APA, the INA, and [8 C.F.R. § 245.2(a)(5)] establish a clear and certain right to have immigration status adjustments adjudicated, and to have them adjudicated within a reasonable time frame"); *Baker v. Still*, 2007 WL 1393750, at *2 (N.D. Cal. 2007) (James, M.J.) (the defendants have a statutorily prescribed duty to adjudicate the plaintiff's application within a reasonable time under 5 U.S.C. § 555(b)); *Gelfer v. Chertoff*, 2007 WL 902382 (N.D. Cal. 2007) (Alsup, J.); *Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007) (Chen, M.J.) (finding a nondiscretionary duty on the part of the government to act on an I-485 application and explaining that "there is a difference between the INS's discretion over *how* to resolve an application and the INS's discretion over *whether* it resolves an application") (emphasis in original); *Aboushaban v. Mueller*, 2006 WL 3041086, at *2 (N.D. Cal. 2006) (Zimmerman, M.J.); *see also Razaq v. Poulos*, 2007 WL 61884, at *3 (N.D. Cal. 2007) (Brazil, M.J.) (finding that the USCIS has a mandatory duty to *decide* whether to grant or deny an I-130 application and that it is not authorized to hold onto the petition and make no decision).

section 1252(a)(2)(B))). This also applies to 8 U.S.C. § 1252(a)(2)(B)(ii)). *See Ana Int'l*, 393 F.3d at 890; *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 687-91 (9th Cir. 2003).

The Ninth Circuit in *Spencer Enterprises v. United States*, 345 F.3d 683, 689 (9th Cir. 2003), explained that 8 U.S.C. § 1252(a)(2)(B)(ii)

> refers not to "discretionary decisions," as did the transitional rules [of the Illegal Immigration Reform and Immigrant Responsibility Act], but to acts the *authority* for which is *specified* under the INA to be discretionary. Following the "well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words," we must assume that this difference in language is legally significant. If Congress had intended to withdraw jurisdiction over all "discretionary decisions," it would have used the same language found in the transitional rules.

(emphasis in original) (citations omitted).

This cautions against interpreting section 1252(a)(2)(B)(ii) as a blanket grant of discretion to the Attorney General of all matters related to the adjustment of status. The discretion granted by statute is specified and limited. The Ninth Circuit's understanding is in accord with other circuits.[8]

For instance, the Fifth Circuit has stated:

> [O]ne might mistakenly read § 1252(a)(2)(B)(ii) as stripping us of the authority to review any discretionary immigration decision. Such a reading is mistaken, however, 'because § 1252(a)(2)(B)(ii) strips us only of jurisdiction to review' the discretionary authority that is *specified in the statute*. As we have repeatedly noted, we observe again that the language of § 1252(a)(2)(B)(ii) is thoroughly 'pellucid on this score; it does not allude generally to "discretionary authority" or to "discretionary authority exercised *under this statute*," but specifically to "authority for which is specified under this *subchapter* to be in the discretion of the Attorney General.'

*Ahmed v. Gonzales*, 447 F.3d 433, 436 (5th Cir. 2006) (citations omitted) (emphasis in original).

---

[8] The Second, Third, Sixth, and Seventh Circuits have reached the same conclusion. *See Sanusi v. Gonzales*, 445 F.3d 193, 198-99 (2d Cir. 2006) (per curiam); *Alaka v. Attorney Gen. of the United States*, 456 F.3d 88, 95 (3d Cir. 2006) (the language of the provision applies "not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion"); *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 633-34 (6th Cir. 2006); *Iddir v. I.N.S.*, 301 F.3d 492, 497-98 (7th Cir. 2002) (the plain language of section 1252(a)(2)(B) addresses only judgments, decisions or actions committed to the discretion of the Attorney General---not inaction or delay).

8

## 4. Subject Matter Jurisdiction

Based on the narrow construction to be given the jurisdiction-stripping provision of the statute, and its language precisely limiting the discretion granted, the Court therefore finds that 8 U.S.C. § 1252(a)(2)(B)(ii) does not deprive the Court of jurisdiction to hear an allegation that the determination of an application for adjustment of status has been unlawfully withheld. While the ultimate decision to grant or deny an application for adjustment of status is unquestionably discretionary, there exists a non-discretionary duty to act on and process the application. This position also best comports with a somewhat analogous statement made by the Ninth Circuit, where it declared that "whether the Secretary's [of the Interior] inaction involves a discretionary or ministerial act, . . . at some level, the government has a general, non-discretionary duty to process the applications [for mineral patents] in the first place. In other words, even if the act were discretionary, the Secretary cannot simply refuse to exercise his discretion." *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 n.6 (9th Cir. 1997) (citations omitted).

The Court is also unpersuaded by the argument that the word "action" in section 1252(a)(2)(B)(ii) should be broadly construed as divesting the courts of jurisdiction to review any matter related to reviewing applications, including the pace of review.[9] The phrase "decision or action" connotes some affirmative conduct by the Attorney General. Black's Law Dictionary defines "action" as "The process of doing something; conduct or behavior." BLACK'S LAW DICTIONARY 28 (7th ed. 1999). The "action" of the statute should therefore not be equated with "inaction," and "indefinite inaction" should not be construed as falling under the rubric of the discretion accorded the Attorney General.

---

[9] *See, e.g., Eldeeb v. Chertoff*, 2007 WL 2209231, at *13 (M.D. Fla. 2007) ("Therefore, this Court has elected to interpret the § 1252(a)(2)(B)(ii) jurisdictional bar broadly, and has concluded that the pace of adjudication of an 1485 application is a discretionary function of the CIS"); *Safadi v. Howard*, 466 F. Supp. 2d 696, 699 (E.D. Va. 2006) ("action" means the entire process of reviewing an adjustment application, including the pace of review).

**5.     Non-Discretionary Duty to Process the Applications**

   **a.     Source of the Non-Discretionary Duty**

The vast majority of courts that have determined subject matter jurisdiction exists, predicate such jurisdiction on the APA's general directive that agencies act in a timely manner. These courts have determined that there are no specific statutory or regulatory time-frames imposed for the application of adjustments of status. They therefore find the source of the non-discretionary duty to process applications in the default rule of the APA that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). In the absence of specific deadlines, these courts determine they have authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

Although the argument is somewhat compelling, the Court must part ways with the analysis. A specific regulation imposes a non-discretionary duty upon the defendants with a specific framework for both the timing and manner of withholding adjudication of adjustment of residency status. The overlooked regulation is 8 C.F.R. § 103.2(b)(18), entitled "Withholding adjudication." This regulation provides:

> A district director may authorize withholding adjudication of a visa petition or other application if the district director determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion, where applicable, in connection with the application or petition, and that the disclosure of information to the applicant or petitioner in connection with the adjudication of the application or petition would prejudice the ongoing investigation. If an investigation has been undertaken and has not been completed within one year of its inception, the district director shall review the matter and determine whether adjudication of the petition or application should be held in abeyance for six months or until the investigation is completed, whichever comes sooner. If, after six months of the district director's determination, the investigation has not been completed, the matter shall be reviewed again by the district director and, if he/she concludes that more time is needed to complete the investigation, adjudication may be held in abeyance for up to another six months. If the investigation is not completed at the end of that time, the matter shall be referred to the regional commissioner, who may authorize that adjudication be held in abeyance for another six months. Thereafter, if the Associate Commissioner, Examinations, with the concurrence of the Associate Commissioner, Enforcement, determines it is necessary to continue to withhold adjudication pending completion of the investigation, he/she shall review that determination every six months.

Thus, the source of the defendants' non-discretionary duty to "act" upon the plaintiffs' application is specifically traced to 8 C.F.R. § 103.2(b)(18). The procedural requirements specified in this regulation ensure that some timely decision is made or action taken on these applications without need of invoking the APA's default rule of reasonable timeliness. The defendants have a non-discretionary duty to comply with 8 C.F.R. § 103.2(b)(18) in order to lawfully withhold adjudication. If the USCIS has failed to comply with 8 C.F.R. § 103.2(b)(18), then this Court has subject matter jurisdiction under either the APA, the mandamus statute, or both, to compel an agency action unlawfully withheld.

### b. Allegation of Failure to Comply with Section 103.2(b)(18) Confers Jurisdiction

Again, 8 U.S.C. § 1255(a) states that, "The status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence. . . ." Title 8 U.S.C. § 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review" [a] "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ." But non-compliance with "such regulations as he may prescribe" is another matter. Under the APA, a court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "Agency action" includes "the whole or part of an agency rule." 5 U.S.C. § 551(13). The applicable agency rule is 8 C.F.R. § 103.2(b)(18). If the allegation is that the USCIS has acted inconsistent with 8 C.F.R. § 103.2(b)(18), the Court has jurisdiction to hear that claim and to compel action under the authority of the APA, in conjunction with federal question jurisdiction, 28 U.S.C. § 1331.

As recognized by the court in *Elmalky v. Upchurch*, 2007 WL 944330, at *4 (N.D. Tex. 2007), while the regulation gives authority to withhold adjudication on an adjustment of status, this must be done consistent with the terms of the regulation:

> Defendants are correct that the decision to withhold adjudication under § 103.2(b)(18) is a discretionary one. *See Zahani v. Neufeld*, 2006 WL 2246211, at *3 (M.D. Fl[a]. June 26, 2006). But there is no evidence in the record indicating that Defendants have

11

> acted pursuant to that section in withholding adjudication on Elmalky's application. Nor is there any evidence that they complied with the somewhat detailed procedural requirements set forth in the regulation. *See Patel v. I.N.S.*, 2000 WL 298921, at *2 n.3 (E.D. Mo. Jan. 20, 2000) (concluding that INS failed to present sufficient evidence that it complied with § 103.2(b)(18)'s procedural requirements).

The *Elmalky* court therefore concluded that it had jurisdiction to review the failure of the USCIS to comply with 8 C.F.R. § 103.2(b)(18). *Id*. Other courts have come to the same conclusion. *See, e.g., Lin v. Chertoff*, 2007 WL 2301118, at *2 (W.D. Okla. 2007) ("Although defendants have submitted a personal declaration of Naboone Puripongs, a supervisor with the Texas Service Center, defendants have not submitted any evidence that they exercise any discretion pursuant to 8 C.F.R. § 103.2(b)(18) to hold adjudication of plaintiff's application in abeyance for any period. The court finds that it has subject matter jurisdiction to entertain the plaintiff's mandamus complaint").

On the other hand, one court has read section 103.2(b)(18) as conferring judicially unreviewable discretion on immigration officers to withhold adjudication while applications are investigated. *See Qiu v. Chertoff*, 486 F. Supp. 2d 412, 418-19 (D.N.J. 2007). It found in section 103.2(b)(18) the explicit grant of authority to indefinitely withhold adjudicating an adjustment of status that has been overlooked by the courts premising jurisdiction under the APA or the mandamus statute. *See id*. at 418. The *Qui* court concluded that "[g]iven that the Attorney General is authorized to exercise 'his discretion . . . under such regulations as he may prescribe,' 8 U.S.C. § 1255(a), the Court is required to defer to his decision to withhold adjudication pursuant to a regulation that he was entitled to promulgate." *Id*. at 419. Based on the "regulations that allow immigration officers to direct investigations into I-485 applications and to withhold adjudication until those investigations are complete," the *Qui* court found that it was without jurisdiction under either the mandamus statute or the APA. *Id*. at 420.

The *Qui* court's reading of section 103.2(b)(18) as necessarily divesting courts of jurisdiction is unconvincing. While the regulation specifically authorizes the withholding of adjudication, this must be done pursuant to the detailed framework for doing so. The section authorizes a district director a total of two years to adjudicate a visa petition or other application. *See Elmalky v. Upchurch*, 2007 WL 944330, at *4 (N.D. Tex. 2007). After that time, the matter must be referred to a regional commissioner

12

who may authorize an additional six months to withhold adjudication. Beyond that both the Associate Commissioner of Examinations and the Associate Commissioner of Enforcement must assess, every six months, the necessity of continuing to withhold adjudication.

The *Qui* court's interpretation is rejected by this Court. Title 8 C.F.R. § 103.2(b)(18) is not a blanket authority to indefinitely withhold adjudication of an application for adjustment of status. Section 103.2(b)(18) allows for the withholding of adjudication, for specified intervals, upon compliance with specific procedural requirements. Absent such compliance, judicial review is not precluded. *See Cao v. Upchurch*, --- F. Supp. 2d ---, 2007 WL 2071900, at *5 (E.D. Pa. 2007); *Al-Juburi v. Chertoff*, 2007 WL 2285964, at *6 (N.D. Tex. 2007); *Elmalky v. Upchurch*, 2007 WL 944330, at *4 (N.D. Tex. 2007). Accordingly, the defendants' motion to dismiss is denied.

**B.      Plaintiffs' Motion for Summary Judgment**

**1.      Summary Judgment Standards**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *See Horphag v. Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). An issue is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248; *Rivera*, 395 F.3d at 1146.

In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on the pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002); *Federal*

*Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004).

**2.     Analysis**

This matter is well suited to summary adjudication, as "Defendants agree that there are no genuine issues of material fact." Docket No. 11, at 6. The plaintiffs filed their adjustment of status applications either on September 22 or 26, 2005, and allege that the defendants have improperly withheld action on their applications. There is no evidence in the record that the defendants have acted pursuant to 8 C.F.R. § 103.2(b)(18) in withholding adjudication on the plaintiffs' applications, or otherwise complied with its procedural requirements. A declaration has been submitted by Naboone Puripongs, Supervisory Adjudications Officer of the Texas Service Center that adjudication is not possible at the present time. Based upon the evidence before the Court, it appears that Puripongs does not have the authority to determine withholding adjudication of the plaintiffs' applications is not possible. That decision must be made by the district director. The district director of the Texas Service Center is Evelyn Upchurch. There is no indication that, at the one year mark of the plaintiffs' applications, Upchurch reviewed the matter and determined adjudication of the applications should have been held in abeyance, or that she reviewed the matter six months later and found it necessary to withhold adjudication. *Cf. Lin*, 2007 WL 2301118, at *2; *Cao*, --- F. Supp. 2d ---, 2007 WL 2071900, at *5 ("8 C.F.R. 103.2(b)(18) requires the district director to determine that a delay is warranted after one year has passed"). There is no affidavit, declaration, or any other evidence from Upchurch that she determined that a delay pursuant to 8 C.F.R. 103.2(b)(18) was proper.

On June 5, 2007, the Court held a hearing and specifically requested the parties to address the implications of 8 C.F.R. § 103.2(b)(18). While the parties have provided additional briefing, the defendants, despite notice that the Court was focusing on this regulation and despite the fact that there

14

is no dispute that the plaintiffs' applications have been pending for well more than a year, have submitted no evidence that they are complying with its terms. Consequently, there is no dispute that the terms of the regulation have not been complied with. "In the absence of compliance with the stated procedure, § 103.2(b)(18) does not give defendants discretion to delay resolution of plaintiffs' applications." *Cao*, --- F. Supp. 2d ---, 2007 WL 2071900, at *5. Because the APA directs that courts "shall" "compel agency action unlawfully withheld or unreasonably delayed," and because the defendants have not complied with section 103.2(b)(18), the Court will compel the defendants to process the plaintiffs' applications. 5 U.S.C. § 706(1).

Moreover, even if section 103.2(b)(18) were inapplicable, given the facts of this case the Court would nevertheless grant the plaintiffs' motion based on the reasoning of the default reasonableness standard relied upon by the other courts of the Northern District of California mentioned above in footnote seven. *See, e.g., Konchitsky v. Chertoff*, 2007 WL 2070325, at *3 (N.D. Cal. 2007) ("defendants have a nondiscretionary duty to act upon plaintiffs' I-485 application and plaintiff has a right to have his application processed"); *Wu v. Chertoff*, 2007 WL 1223858, at *3 (N.D. Cal. 2007) ("taken together, the APA, the INA, and [8 C.F.R. § 245.2(a)(5)] establish a clear and certain right to have immigration status adjustments adjudicated, and to have them adjudicated within a reasonable time frame"); *Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007) (holding there is a non-discretionary duty on the part of the government to act on an I-485 application and explaining that "there is a difference between the INS's discretion over *how* to resolve an application and the INS's discretion over *whether* it resolves an application") (emphasis in original).

### 3. Other Arguments

As a final matter, the Court will briefly address three additional arguments raised by the defendants. These fall within three areas: (1) national security; (2) the burden on the agencies; and (3) the purported "line jumping" effect.

### a. National Security

Several times the defendants allude to national security concerns, and their responsibility to thoroughly conduct background checks on applications. Several courts presented with this issue have expressed similar concerns, invoking the events of 9/11 as grounds for not compelling the defendants to process applications within any particular time frame. This is something of a red herring. Preliminarily, there is no evidence before this Court suggesting there are any national security issues implicated in the applications. Moreover, the thoroughness of background checks must be weighed against the need to actually conduct them. The plaintiffs are currently living and working in the United States. If there is some legitimate national security concern with them or other applicants currently living and working in the country, this surely militates in favor of prompt security checks, not in favor of delay. *Cf. Toor v. Still*, 2007 WL 2028407, at *2 (N.D. Cal. 2007) ("considering the fact that most applicants will be physically present in the United States, [permission for inaction] seems antithetical to national security interests"); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 158 (D. Mass. 2007) ("As plaintiffs point out, they are already living and working in the United States while the application is pending. Further, if the government adjusts Tang's [the petitioner] status in error due to haste . . . , the INA allows it to rescind the status and initiate removal proceedings on the basis that he was inadmissible at the time of admission. 8 U.S.C. §§ 1227(a)(1)(A) & 1256(a)"). Additionally, it should be noted that if there are national security concerns, the procedural requirements of 8 C.F.R. § 103.2(b)(18) allow such concerns to be taken into account, *i.e.*, to accommodate any need to hold an application in abeyance to allow investigation into specific concerns.

### b. Burden on the Agencies

The defendants also explain that they are charged with processing large numbers of name checks. They assert that "Given the large volume of petitions and applications requiring adjudication, the extensive background check that is required for national security and public safety, and the limited resources available to it, CIS is proceeding in an orderly fashion with adjudication of applications for adjustment of status in the order they are received." Docket No. 5, at 6. For fiscal year 2006, the FBI

1 processed in excess of 3.4 million name checks. *See* Docket No. 11, at 8; *Yan v. Mueller*, 2007 WL
2 1521732, at *4, (S.D. Tex. 2007). According to the defendants, as of April 30, 2007, the FBI has
3 completed over 2.5 million name check requests for fiscal year 2007. *See* Docket No. 11, at 6. Thus,
4 the fiscal and administrative burden of processing the name checks is not insignificant and the Court
5 is not unsympathetic to this concern.

6 The Court, however, is not in a position to relieve the defendants' of their obligation to comply
7 with their mandatory duties. Under the APA, a court "shall" "compel agency action unlawfully
8 withheld or unreasonably delayed." 5 U.S.C. § 706(1). In this instance, it is not the place of the judicial
9 branch to weigh a plaintiff's clear right to administrative action against the agency's burdens in
10 complying. *Cf. Tang*, 493 F. Supp. 2d at 158 ("defendants . . . ask the Court to relieve the pressure of
11 excusing them from their statutory duty, and letting the cost fall on immigrant plaintiffs. I will follow
12 the law and leave it for the political branches to fix the system"). The question of whether there are
13 adequate resources to process the volume of name checks is a policy decision for the legislative and
14 executive branches. *Cf. Eldeeb v. Chertoff*, 2007 WL 2209231, at *12 (M.D. Fla. 2007) ("It is not this
15 Court's place to decide for the executive branch that it needs to hire more CIS employees to process I-
16 485 applications, or more FBI employees to perform background checks. That decision is theirs"). It
17 is clearly not appropriate for the Court to attempt to address this issue by sanctioning the defendants'
18 non-compliance. This argument is, therefore, more appropriately presented to the political branches in
19 support of allocating additional resources or to Congress for modification of the governing statutes and
20 regulations.

21 **c.     "Line Cutting"**
22
23 Lastly, the defendants assert that ordering the processing of the plaintiffs' application "would
24 unfairly favor applicants with the means to hire an attorney and file federal mandamus actions.
25 Applicants without the resources to bring such actions would suffer further delays in the processing of
26 their applications, because other later-filed applications would be given court-mandated preferential
27 treatment." Docket No. 5, at 6-7. They further sound a related note: "allowing immigration applicants
28

17

to use mandamus to 'cut in line,' would open the floodgates for immigration-related mandamus actions. The use of mandamus in immigration matters would shorten the delay for some, only to lengthen it for others." *Id.* at 7. Several courts have concurred. *See, e.g., Manzoor v. Chertoff*, 472 F. Supp. 2d 801, 809 (E.D. Va. 2007) (declining to grant relief in a case involving a delayed name check to avoid providing "an incentive for naturalization applicants to file civil actions in an effort to . . . 'jump to the front of the line'"); *Qiu v. Chertoff*, 486 F. Supp. 2d 412, 420 (D.N.J. 2007) (enforcing compliance "would do nothing more than shuffle to the front of the line those . . . applicants canny enough to file a complaint in federal district court").

The Court does not find this argument compelling. First, these plaintiffs have more than "waited their turn," having seen millions of later-filed applications processed before theirs. According to the documents submitted by the defendants, only 20 percent of FBI name checks take up to six months to resolve, and less than one percent remain pending for more than six months. *See* Docket No. 5, Ex. 1. The plaintiffs have been waiting close to two years for the completion of a name check. Thus, far from "cutting in line," or gaming for an unfair advantage vis-a-vis similarly situated applicants, the plaintiffs are simply asking to be placed back in the queue. As for creating an incentive for additional filings, the defendants are correct that others in the same position may seek similar judicial recourse. But the fact that other individuals similarly deprived of their rights to have their applications processed according to the law may seek redress is hardly a reason to withhold relief that is legally warranted. To the contrary, perhaps recognizing this possibility will provide the defendants with adequate incentive to begin processing these applications in a lawful and timely fashion in order to obviate the applicants' need to resort to the courts for redress.

The ancillary concerns raised by the defendants therefore do not obviate the plaintiffs' right to have their applications for adjustment of status processed.

**CONCLUSION**

18

Accordingly, the defendants' motion to dismiss [Docket No. 5] is DENIED, and the plaintiffs' motion for summary judgment [Docket No. 9] is GRANTED. Pursuant to 5 U.S.C. § 706(1) of the APA, the Court ORDERS the defendants to adjudicate the plaintiffs' applications for legal permanent residency by October 15, 2007, and to inform the plaintiffs of their determination. The defendants are further ORDERED to file an affidavit with the Court on or before October 15, 2007, demonstrating compliance. The case will then be closed.

IT IS SO ORDERED.

September 6, 2007

*Saundra B Armstrong*

Saundra Brown Armstrong
United States District Judge